# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JASON E. BRAASCH,

        Petitioner,

     v.                            Case No. 04-C-593

GREG GRAMS[1], Warden,
Columbia Correctional Institution,

        Respondent.

---

## DECISION AND ORDER ON HABEAS PETITION

---

### I. BACKGROUND

The petitioner, Jason E. Braasch ("Braasch"), filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 following his conviction and sentence in the Walworth County Circuit Court for Felony Murder, Armed Robbery with the Use of Force, and Armed Burglary with a Dangerous Weapon. Braasch was initially sentenced on all three counts, but the court later determined that the armed robbery count was a lesser included offense of the felony murder count. The result is that Braasch received a sixty (60) year sentence on the felony murder count and a thirty-five (35) year sentence, which was stayed, and twenty (20) years probation on the armed burglary count. Braasch appealed, and in a decision dated January 8, 2003, the Wisconsin Court of Appeals affirmed his conviction. Braasch's petition for review in the Wisconsin Supreme Court was denied on April 22,

---

    [1] The court hereby substitutes Greg Grams, the current warden of Columbia Correctional Institution, for the previous respondent, Philip Kingston. When a habeas petitioner is in prison, the current warden is the proper respondent. *Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996).

2003, and Braasch did not file a petition for certiorari in the United States Supreme Court. Braasch thereafter filed his federal habeas petition on June 21, 2004.

Braasch's habeas petition raises five claims: (1) that the trial court erred on its rulings regarding the admission and exclusion of evidence; (2) that the evidence presented at trial was not sufficient for conviction; (3) that Braasch is entitled to re-sentencing based on "new factors"; (4) that Braasch received ineffective assistance of counsel at the trial and sentencing stages; and (5) that Braasch is entitled to a new trial in the interest of justice. The respondent concedes that Braasch has exhausted his state court remedies with respect to the issues raised in his habeas petition and that the petition was timely filed.

## II. FACTS

The following is a summary of the facts underlying Braasch's convictions as set forth by the Wisconsin Court of Appeals.

> ¶ 2 While at Braasch's apartment, Michael Schumacher, Ricardo Vela, Theodore Krawczyk and Braasch discussed a plan for Schumacher to get money he was owed from Frank Fazio. Braasch did not want Schumacher to use his car because Schumacher did not have a license, so Braasch drove them to Fazio's apartment. Braasch and Krawczyk waited in the car. Schumacher took a baseball bat with him. Schumacher and Vela beat and stabbed Fazio to death and robbed him of money, coins, jewelry, knives, beer and wine.

> . . . .

> ¶ 4 . . . after Schumacher and Vela returned to the car, the four men returned to Braasch's apartment. Schumacher testified that Braasch hid two knives under the cushion of the couch in the bedroom. Later they drove to a Lake Geneva hotel. On the way, the baseball bat was put in a dumpster. They stayed at the hotel drinking for a couple of hours. They left the hotel to drive to Wisconsin Rapids where Schumacher had a girlfriend. On the way they stopped in Princeton where they met a couple of women. They drank with the women. One of the women testified that the men said they were in the Latin Kings gang and that they joked about killing people as part of doing what is necessary. Although Vela could not remember telling

2

the women this, his testimony confirmed that he and Braasch are Latin Kings. Once in Wisconsin Rapids, the four checked into a motel. They pawned some of the stolen items and went to the mall and bought some new clothes. When Vela and Braasch returned home the next day, and after learning that Fazio had died, Braasch helped Vela dispose of his blood-stained boots and pants in a dumpster.

(Answer, Ex. F at ¶¶ 2-4 (Wisconsin Court of Appeals Decision dated December 8, 2003, *available at* 2003 WL 58284) [hereinafter "Decision"].)

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus for a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision results in an "unreasonable application" of clearly established federal law when the state court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle

3

from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Moreover, "[a] rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000).

Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

## IV. DISCUSSION

### A. The Trial Court's Evidentiary Rulings

Braasch argues that the trial court committed two errors pertaining to the evidence admitted at his trial. First, Braasch claims that the trial court should not have allowed into evidence testimony pertaining to events that occurred after he and his companions left the victim's (Fazio) apartment. Braasch argues that such evidence was not relevant to the charges against him and should have been excluded. Second, Braasch argues that the trial court erred when it did not allow him to introduce psychological evidence in the form of a doctor's testimony. Braasch maintains that the doctor's testimony was necessary to establish that he did not fully understand what his co-actors had planned when he went with them to Fazio's apartment.

The first question that needs to be addressed is whether Braasch's arguments relating to the trial court's evidentiary rulings raise arguments that he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), and if so, whether such claims were properly raised in state court. Neither Braasch's petition and brief in this court, nor his brief in the

4

Wisconsin Court of Appeals, expressly frame his evidentiary arguments in federal constitutional terms. The arguments, nevertheless, have potential constitutional implications.

With regard to the "after-the-fact" evidence which was admitted at trial, Braasch's Fourteenth Amendment right to Due Process is potentially implicated. The United States Supreme Court has held that while "[w]e do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence," the constitution might be offended if an evidentiary ruling "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941); *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991). Again with respect to state evidentiary principles, the Supreme Court has held that, "[c]ases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure." *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (citations omitted).

These Due Process limitations might also be applicable to Braasch's argument challenging the trial court's exclusion of testimony relating to his psychological condition. Furthermore, Braasch's Sixth Amendment right to put on a defense is arguably implicated.

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

This right to present witnesses, however, is not absolute.

5

The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. The Compulsory Process Clause provides him with an effective weapon, but it is a weapon that cannot be used irresponsibly. . . . The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony. . . . The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.

*Id*. at 410-11. The constitutional limitation on restricting evidence by the defense is summed up as follows:

A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus "bow to accommodate other legitimate interests in the criminal trial process." As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations and footnote omitted).

Based on the above, in my opinion, the arguments in Braasch's habeas petition that the trial court erred in introducing and excluding evidence at trial sufficiently raise claims that he is being held in violation of the United States Constitution so that review under 28 U.S.C. § 2254 is proper.

The next question then, is whether Braasch adequately raised such arguments in state court. The respondent argues that Braasch's claims based on the trial court's evidentiary rulings should be dismissed because when Braasch raised the issues in state court, they were framed as questions of

6

Wisconsin evidence law, and no constitutional violation was asserted. (Resp't's Br. at 11.) Therefore, the respondent urges, Braasch is barred from raising any constitutional argument in this court by the doctrine of procedural default.

It is true that a "habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir.1997). A petitioner procedurally defaults any claim he does not present to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.1996).

In determining whether a petitioner has fairly presented a claim to the state judiciary, the court should examine four factors: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001). "The bottom line is that the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Id*. (quotations omitted).

Braasch's brief submitted to the Wisconsin Court of Appeals relies primarily on Wisconsin cases interpreting Wisconsin law of evidence. The cases cited are not without reference to constitutional principles, *see e.g., Whitty v. Wisconsin*, 149 N.W. 2d 557, 34 Wis. 2d 278 (Wis. 1967), but I cannot say that the cases cited apply constitutional analysis to facts similar to those in

7

Braasch's case. It is apparent, however, that Braasch argued that the evidentiary rulings in his trial were not only erroneous, but also affected the fundamental fairness of his trial. Braasch argued that "[t]he Court's rulings on these issues were erroneous and highly prejudicial to Braasch, depriving him of his right to due process of the law and a fair trial." (Answer, Ex. B at 35 (Braasch's brief in the Wisconsin Court of Appeals).)

In my opinion, Braasch's arguments in the Wisconsin Court of Appeals were in terms which sufficiently call to mind specific constitutional rights, and allege facts within the mainstream of constitutional litigation, such that federal constitutional issues were in play. When looked at in practical terms, the state court was sufficiently alerted to the federal constitutional nature of the issues presented. After all, Braasch argued that allowing certain evidence into his trial and prohibiting him from calling a certain witness in his defense deprived him of due process of law and a fair trial. As a result, Braasch has not procedurally defaulted his claims based on the trial court's evidentiary rulings, and this court must consider them.

Given what I have already stated regarding the way Braasch framed his arguments before the court of appeals, it is not surprising that the court's decision does not directly reference the federal constitutional aspects of Braasch's arguments. Like Braasch, the court of appeals relied primarily on Wisconsin evidence law. Nevertheless, as stated above, the federal constitutional aspects of Braasch's arguments were adequately before the court of appeals. Therefore, this court's duty is to review the Wisconsin Court of Appeals' decision under the deferential standard of 28 U.S.C. § 2254 (d)(1) to determine whether it was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable determination of the facts. *See Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.

1997) (applying the deferential standard of § 2254(d)(1) even where the state court's discussion of the constitutional issue at hand was "perfunctory").

The "after-the-fact" evidence

Prior to trial, Braasch made a motion seeking suppression of evidence concerning matters occurring after the completion of the charged offenses. That motion was denied, and at trial three of Braasch's co-actors testified. They, along with other witnesses, testified to the events summarized in the court of appeals' decision, including the events that occurred after the group (Braasch, Michael Schumacher, Theodore Krawczyk, and Ricardo Vela) left the scene where Frank Fazio was murdered.[2] In addition to the evidence contained in the court of appeals' factual summary, there was also testimony that Krawczyk stole money from the women the group met. Photographs depicting Braasch, Vela, and Schumacher showing gang signs and smiling "like buddies" inside the hotel room were also admitted into evidence. (Pet. at 13, 17.)

Krista Klass, one of the women whom the group met, testified at trial. She testified to some of the information recounted by the court of appeals. Klass stated that she and her friend passed the group while driving on the highway, waved at them, and the group followed them to Klass' house. While there, Schumacher and Vela were waving $100 bills around and Klass was told that the individuals in the group were all Latin Kings. (Pet. at 18.)

Mary Petersen also testified. Petersen had known Braasch for seven years previous to trial and had lived with him for two and one half years. At various places in the record Peterson is

_____

[2] The court of appeals refers to Fazio's apartment. Elsewhere in the record there are references to the crimes taking place at a restaurant. It appears that the crimes took place in an apartment above a restaurant. In any event, Braasch's arguments pertain to evidence concerning events after the group left the scene of the crimes.

9

referred to as Braasch's fiancee. Petersen's testimony insinuated that Braasch had lied to her and left out details about what happened around the time of the crimes and the ensuing trip. Petersen's testimony also insinuated that Braasch had sex with one of the women whom the group met while on their trip. (Pet. at 19.)

Braasch argues that admitting the after-the-fact evidence had the effect of depicting him as an "unsavory character," and as someone who associates with "unsavory characters." Braasch maintains that this depiction of him ultimately caused the jury to render a verdict "upon an emotional reaction to the events after-the-fact, as opposed to rendering a verdict upon Braasch's knowledge prior to, and at the time of, the commission of the offenses." (Pet'r's "Statement of Reply" [hereinafter "Pet'r's Br."] at G1-P7.) Braasch also asserts that impropriety is further demonstrated by the fact that during closing argument, the District Attorney commented only several times on events leading up to the crime, but commented numerous times on events occurring after the crime. (Pet. at p. 1-3.)

The Wisconsin Court of Appeals determined that the trial court's admission of evidence concerning events that occurred after the crimes was proper.

> ¶ 6 We conclude that the trial court properly exercised its discretion in determining that postcrime conduct was relevant. Braasch's theory of defense was that he did not know in advance that Schumacher and Vela intended to rob Fazio, but rather he thought they were merely going to collect a debt. He relied on evidence that he was out of the room when discussions about robbing Fazio were held. Thus, at issue was what Braasch knew and when he knew it. Postcrime conduct that reflects a consciousness of guilt is relevant to such knowledge. *See State v. Bettinger*, 100 Wis.2d 691, 698, 303 N.W.2d 585 (1981) (evidence of the defendant's subsequent bribery of the sexual assault victim was admissible and properly joined with the sexual assault charge); *Price v. State*, 37 Wis.2d 117, 131, 154 N.W.2d 222 (1967) (evidence of acts intended to obstruct justice or avoid punishment for the present crime are admissible in evidence as admissions by conduct); *State v. Neuser*, 191 Wis.2d 131, 144-45, 528 N.W.2d 49 (Ct.App.1995) (evidence of the defendant's

10

subsequent verbal threat to the victim was properly admitted); *State v. Winston*, 120 Wis.2d 500, 505, 355 N.W.2d 553 (Ct.App.1984) (an accused's flight or related conduct is generally admissible as circumstantial evidence of consciousness of guilt and thus of guilt itself). "Conduct of a suspected person after the crime is a legitimate subject for consideration, as bearing upon the probability of his guilt. . . ." *Paulson v. State*, 118 Wis. 89, 106, 94 N.W. 771 (1903). While the postcrime "road trip" to Wisconsin Rapids may not have been intended as flight, things that happened along the way were indicative of a consciousness of guilt. The postcrime conduct, particularly the concealing of evidence, served as an admission by conduct and therefore was highly probative. *See Price*, 37 Wis.2d at 132, 154 N.W.2d 222. Thus, it was admissible even in light of the claim of substantial prejudice. *See Neuser*, 191 Wis.2d at 144-45, 528 N.W.2d 49. There was no error in the admission of postcrime activities.

(Decision at ¶ 6.)

This court will not review the decision of the court of appeals with regard to the propriety of admitting the postcrime evidence under Wisconsin evidence law. Furthermore, there are no factual determinations at issue here. Therefore, this court's duty is to determine whether the court of appeals' decision that the admission of postcrime evidence was proper resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Under the applicable Supreme Court standard, admitting the after-the-fact evidence only violated the constitution if it "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941); *Estelle v. McGuire*, 502 U.S. 62, 75 (1991). Nothing about the facts of the present case suggest that it might fit into one of the narrow "contrary to" Supreme Court precedent situations, so this court will look to the "unreasonable application of" prong.

To be sure, the evidence concerning what Braasch did after he and the others left the crime scene does not cast him in a good light. There was evidence that Braasch is a member of a gang, that he was posing for pictures with his "buddies" shortly after some of them killed Frank Fazio, that he

11

met two women who were strangers to him on the highway and may have had sex with one of them, that he lied to his fiancee, and that one of his co-actors stole money from the women they met. Indeed, this evidence might lead some people to believe that he and his companions are "unsavory characters." However, the court of appeals determined that the postcrime evidence was relevant because it tended to establish consciousness of guilt. Moreover, the court held that "the postcrime conduct, particularly the concealing of evidence, served as an admission by conduct and therefore was highly probative. . . . Thus, it was admissible even in light of the claim of substantial prejudice." The court concluded that, as often happens in criminal trials, the evidence offered against Braasch was relevant and admissible even though it cast him in a poor light.

I cannot say that the court of appeals' determination resulted in a decision that is an unreasonable application of Supreme Court precedent. The after-the-fact evidence that was introduced included the fact that Braasch hid knives in his home, helped dispose of the bat as well as bloody clothing, and may have been joking about killing people as part of doing "what is necessary." The fact that the jury also heard some other "unsavory" details was inevitable if the government was to present a cohesive picture of what happened. In the end, Braasch is only entitled to habeas relief if the admission of after-the-fact evidence at his trial "so infuse[d] the trial with unfairness as to deny due process of law." Even if it would have been possible for the trial court to keep some of the unsavory details from the jury, while still allowing the government to present a cohesive story, I cannot say that Braasch's trial was "so infused with unfairness" that he was denied due process of law. Braasch is therefore not entitled to habeas relief based on the admission of the after-the-fact evidence.

12

Doctor's Testimony

At trial, Braasch intended to offer the testimony of a psychologist, Dr. Mann. The state objected to Dr. Mann's testifying, and the trial court ruled that Dr. Mann's testimony was not relevant. Braasch made an offer of proof that if called, Dr. Mann would testify that Braasch has an IQ of 82 and is also limited in his ability to take in and process information. (Answer, Ex. B at 5-6.)

At a postconviction motion hearing conducted on August 23, 2001, evidence regarding Braasch's psychological functioning and limitations was taken. Dr. Mann and Dr. Donald Meyer, another psychologist, testified. The doctors' testimony indicates that Braasch has limited ability to take in information and becomes easily distracted by audio and visual stimuli. Dr. Meyer testified that Braasch suffered from attention deficit disorder as a child and continues to have attention difficulties. (Answer, Ex. B at 29-30.) According to Dr. Meyer, "in circumstances where [Braasch] is around a lot of distractions, a lot of noises, lots of activity, that he's not going to pay attention, and take the information in and process it as well as the general population." (Answer, Ex. B at 31.) Dr. Mann testified that he agreed with Dr. Meyer, and if he were to have been called as a witness at Braasch's trial, would have testified to the same limitations.

Braasch argues that testimony relating to his psychological limitations and limited ability to process information was crucial to his defense because,

> Braasch's theory of defense was that he did not know that Schumacher planned on doing what they did at the Chalet Restaurant. To appropriately defend the charges, Braasch needed to be able to convince the jury that he was truthful when he said that he did not know of the plans - - offer evidence to undermine the inference drawn from the statements of Schumacher and Vela that, because they say he was in the room he must have heard the discussion and entered into the criminal intent behind the discussion.

13

(Pet. at p. 1-5.) In essence, Braasch claims that the doctor's testimony was crucial because it offered an explanation as to how Braasch could have been in a room where certain matters were discussed, yet not have fully processed or understood what was discussed.

The court of appeals addressed the trial court's exclusion of Dr. Mann's testimony as follows:

¶ 7 As additional support for his theory of defense that he did not know Schumacher planned to rob Fazio, Braasch sought to introduce the testimony of Dr. David Mann, a psychologist. The offer of proof explained that Dr. Mann would testify about Braasch's IQ of eighty-two, Braasch's limited ability to respond to external stimuli and process information, how interruptions affect his ability to process information, and his memory. Dr. Mann had Braasch complete certain tests to determine the extent of his abilities. Through this testimony Braasch wanted to show that even if he was in the room when Schumacher discussed a plan to rob Fazio or do whatever it took to get the money, Braasch may not have processed or remembered that information because his attention was focused on something else. [FN3] The trial court concluded that Dr. Mann's testimony was not relevant and excluded it.

¶ 8 We agree with the trial court's determination that the evidence was not relevant. First, Dr. Mann was not going to render an expert opinion about whether Braasch actually absorbed and processed the information about Schumacher's plan. Second, and more important, Braasch's ability to hear and process the plan was not at issue because Braasch himself admitted to police that he engaged in conversation with Schumacher about what would happen if Fazio did not give Schumacher the requested sum of money. Braasch stated he heard Schumacher say he would hit Fazio with the baseball bat and rob him, or kill and rob Fazio. Braasch dismissed Schumacher's comment as a joke. Dr. Mann's explanation that Braasch had difficulties processing conversations when distracted was irrelevant because Braasch admitted he heard and understood Schumacher.

¶ 9 Braasch argues that Dr. Mann's testimony was admissible as mental health history. *See State v. Flattum*, 122 Wis.2d 282, 305, 361 N.W.2d 705 (1985) ("properly qualified psychiatric testimony with respect to a defendant's mental health history is admissible if such testimony is shown to be relevant"). However, even assuming Dr. Mann would have testified about Braasch's mental history and that Braasch suffers from attention deficit disorder (ADD), [FN4] there was no evidentiary basis for the jury to conclude that the disorder came into play during the conversation about getting money from Fazio. Again, Braasch's own admission that he heard and understood Schumacher makes evidence of ADD irrelevant. The trial court properly exercised its discretion in excluding Dr. Mann's testimony.

14

> FN3. Krawczyk testified that Braasch was fiddling with the radio during part of the discussion. Braasch's fiancée testified that Braasch could only concentrate on one thing and would not hear someone speaking to him if he was focused on something else.
>
> FN4. At the postconviction motion hearing, Braasch offered the testimony of Dr. Donald Meyer, a psychologist. Dr. Meyer reviewed past reports pertaining to educational and psychological information about Braasch. He opined that Braasch suffers from attention deficit disorder and therefore, in a situation where there were lots of distractions, Braasch would not take in information and process it as well as the general population. Dr. Mann also testified that he was prepared to give trial testimony about Braasch's mental health history.

(Decision at ¶¶ 7-9.)

The court of appeals determined that Dr. Mann's testimony that Braasch has difficulty processing and understanding information was not relevant because Braasch admitted that he heard and understood Schumacher's plan. This court will not review the court of appeals' determination that the evidence was not relevant because that is a question of Wisconsin evidence law. Instead, this court must again determine if the evidentiary ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The relevant Supreme Court precedents are those discussed above. An evidentiary ruling would be unconstitutional if it "so infused the trial with unfairness as to deny due process of law." *Lisenba*, 314 U.S. at 228; *Estelle*, 502 U.S. at 75. Moreover, exclusion of a defense witness based on an evidentiary rule would be unconstitutional if to do so is "arbitrary" or "disproportionate to the purposes [the rule is] designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

15

Here, the evidentiary rule involved is the rule that only relevant evidence is admissible at trial. The rule is basic, and without it trials would be impossible. If the parties were allowed to put on any, and as much evidence as they wanted, regardless of its relevance, confusion and delay would abound. The court of appeals recognized that Braasch wanted to introduce the evidence in order to show that he did not understand Schumacher and the others' plans with regard to Frank Fazio. However, the court found that Braasch "admitted to police that he engaged in conversation with Schumacher about what would happen if Fazio did not give Schumacher the requested sum of money. Braasch stated he heard Schumacher say he would hit Fazio with the baseball bat and rob him, or kill and rob Fazio." (Decision at ¶ 8.) In light of this, I cannot say that the trial court's ruling that the doctor's testimony was irrelevant, and the court of appeals affirmance, was arbitrary. As stated above, there are good reasons, i.e., preventing confusion of the jury, to not admit irrelevant evidence at trial.

Nor was the exclusion of the doctor's testimony "disproportionate to the purpose" of the rule that only relevant evidence is admissible at trial. Preventing confusion of the jury and providing for an expeditious judicial process are important interests. Moreover, admitting expert testimony on a topic that is not at issue could cause substantial confusion to a jury.

Furthermore, I cannot say that excluding testimony aimed at showing that Braasch did not understand Schumacher's plan "so infused the trial with unfairness as to deny due process of law." Again, the court of appeals determined that Braasch had admitted that he did understand the plan. In short, the court of appeals's determination did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court. Braasch is not entitled to habeas relief based on the exclusion of Dr. Mann's testimony.

16

## B. Sufficiency of the Evidence

Braasch's next argument is that there was not sufficient evidence upon which to support a guilty verdict. Specifically, Braasch argues that there was insufficient evidence that he knew that Schumacher and Vela would enter Fazio's residence without consent, and that such is an element of the crime of armed burglary. (Answer, Ex. B at 37; Pet. at pp. 2-1, 2-2.) A state court conviction which is not based on sufficient evidence from which a jury could find the defendant guilty beyond a reasonable doubt violates the Due Process clause of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The *Jackson* court stated the constitutional standard as follows:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id*. at 318-19 (footnote and citation omitted).

The court of appeals addressed Braasch's sufficiency of the evidence argument as follows:

> ¶ 10 Braasch argues that because Schumacher and Vela concocted a plan to enter Fazio's apartment without Fazio's consent as they were on the steps to the apartment [FN5], the evidence was insufficient to support a finding that Braasch was guilty as a party to the crime of armed burglary. We may not reverse a conviction on the basis of insufficient evidence "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis.2d 493, 501, 451 N.W.2d 752 (1990). We must accept the reasonable inferences drawn from the evidence by the jury. *Id*. at 506-07, 451 N.W.2d 752.
>
> ¶ 11 The State was not required to show an express agreement amongst the four men as to how their criminal objective would be met. While proof of "[a]n agreement among two or more persons to direct their conduct toward the realization

17

of a criminal objective" is required, "a mere tacit understanding of a shared goal is sufficient." *State v. Hecht*, 116 Wis.2d 605, 625, 342 N.W.2d 721 (1984) (citation omitted). Additionally, "an aider and abettor may be guilty not only of the particular crime that to his knowledge his confederates intend to commit, but also for different crimes committed that are a natural and probable consequence of the particular act that the defendant knowingly aided or encouraged." *State v. Ivy*, 119 Wis.2d 591, 596-97, 350 N.W.2d 622 (1984).

¶ 12 The jury heard sufficient evidence to conclude that the four men went to Fazio's residence for the purpose of robbing Fazio. It was 1:30 in the morning, Schumacher had a baseball bat, and Braasch turned off his headlights as he pulled into the parking lot at Fazio's residence. Early in the conversation about money, Schumacher reportedly said he would do "whatever it takes." A reasonable inference exists that entrance would be gained to the apartment by whatever means necessary. Thus, armed burglary was a natural and probable consequence and within the tacit understanding to commit the crime. The evidence was sufficient to support the jury's guilty verdict for party to the crime of armed burglary.

FN5. As they climbed the stairs, Schumacher told Vela they would claim their car had broken down and ask to use Fazio's phone. Schumacher's deceit negated Fazio's consent in permitting Schumacher and Vela entrance to his apartment. *See State v. Inglin*, 224 Wis.2d 764, 775, 592 N.W.2d 666 (Ct.App.1999). There was no consent in fact. Wis. Stat. § 939.22(48)(c).

(Decision at ¶¶ 10-12.)

The standard of review applied by the court of appeals is essentially the same as that required by Supreme Court precedent. The court of appeals looked to see if "the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." This is the same standard set forth in *Jackson*.

Moreover, the court of appeals' determination was not contrary to or an unreasonable application of that standard. As the court of appeals stated, the jury heard that Braasch and the others went to Fazio's at 1:30 in the morning, that Schumacher had a baseball bat, that Braasch turned off

18

his headlights as he pulled into the parking lot, and that in a conversation about money Schumacher reportedly said he would do "whatever it takes." It was not unreasonable for the court of appeals to determine that a jury could reasonably find that Braasch went to Fazio's with the intent that the group rob Fazio, and that armed burglary was "a natural and probable consequence" of their plan, and within Braasch's "tacit understanding" of the plan. Braasch is not entitled to habeas relief based on his sufficiency of the evidence argument.

## C. Re-sentencing Based On "New Evidence"

In his habeas petition Braasch identifies entitlement to a new sentencing hearing based on new evidence as one of his asserted grounds for relief. (Pet. at S-C-1.) However, Braasch does not provide further support in the petition for this asserted ground for relief, nor has he addressed the issue or made argument in his briefs. To the extent that Braasch raises arguments related to his sentencing, such arguments relate to the effectiveness of his sentencing counsel, and will be discussed below. Because Braasch has not developed his argument, he has abandoned this asserted ground for habeas relief. *See Duncan v. State of Wis. Dept. Health and Family Serv.*, 166 F.3d 930, 934 (7th Cir.1999) (stating that arguments that a party fails to develop in its brief in any meaningful manner will be deemed waived or abandoned); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) (stating that the failure to brief and argue an issue before the district court is grounds for finding that the issue has been abandoned).

In any event, it does not appear that Braasch's re-sentencing argument raises a claim that is based on federal law. The record from Braasch's state court proceedings reveals that his re-sentencing argument is based on Wisconsin law which allows re-sentencing, in some circumstances, based on "new factors." The Wisconsin Court of Appeals, however, rejected Braasch's argument

19

because no "new factors" had been presented. (Decision at ¶ 14.) Braasch has not provided any argument as to how the United States Constitution or federal law is implicated. Braasch has therefore failed to establish entitlement to habeas relief based on this ground.

**D. Ineffective Assistance of Counsel**

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

Braasch argues that he received ineffective assistance of counsel both at trial and at sentencing. Braasch maintains that his trial counsel was ineffective because: (1) counsel did not offer testimony from Dr. Mann at trial nor make a proper offer of proof as to what Dr. Mann would testify to regarding Braasch's mental health history (Pet. at p. 3-1); (2) counsel did not call character witnesses at trial (Pet. at p. 3-2.); (3) counsel did not object to questions asked at trial which

20

demonstrated that Braasch was untruthful and had sex with one of the women he met while on the trip (Pet. at 3-2, 3-3.); (4) counsel failed to object to various references throughout the trial that Braasch was affiliated with the Latin Kings (Pet. at p. 3-3.); and (5) counsel withdrew Braasch's not guilty by reason of mental disease or defect plea without Braasch's consent. (Pet'r's Br. (unpaginated section entitled "Memorandum Part One").)

Braasch claims that his sentencing counsel (a different lawyer than his trial counsel) was ineffective by failing to meet with Braasch adequately, failing to return phone calls, failing to advise Braasch regarding the sentencing process, failing to timely have Braasch prepare a statement for the sentencing court, failing to seek people to come to court to testify on Braasch's behalf or write letters on his behalf, failing to follow through with an independent sentencing investigation, failing to call any witnesses at sentencing, and failing to have witnesses adequately explain Braasch's mental health history to the sentencing court. (Pet. at pp. 3-3 - 3-5.)

The Wisconsin Court of Appeals identified the correct constitutional standard to apply when assessing an ineffective assistance of counsel claim.

> ¶ 15 Braasch claims he was denied the effective assistance of counsel during the trial and at sentencing. "There are two components to a claim of ineffective assistance of counsel: a demonstration that counsel's performance was deficient, and a demonstration that such deficient performance prejudiced the defendant. The defendant has the burden of proof on both components." *State v. Smith*, 207 Wis.2d 258, 273, 558 N.W.2d 379 (1997) (citations omitted). When a defendant fails to prove either prong of the test, the reviewing court need not consider the remaining prong. *See State v. Hubanks*, 173 Wis.2d 1, 25, 496 N.W.2d 96 (Ct.App.1992).

(Decision at ¶ 15.) The standard identified by the court of appeals is the same standard set forth in *Strickland*. This court, then, must determine whether the court of appeals' application of the *Strickland* standard was unreasonable. That is to say, in order for habeas relief to be granted, the

21

court of appeals' decision must be "more than incorrect or erroneous," it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

<u>Trial Counsel</u>

The court of appeals addressed the first four reasons put forth by Braasch as to why his trial counsel was ineffective. The court rejected Braasch's argument that his counsel was ineffective based on possible testimony from Dr. Mann's because "[w]e have considered and rejected the claim that testimony about Braasch's mental health history was relevant. Braasch was not prejudiced by counsel's failure to define Dr. Mann's testimony in any other fashion." (Decision at ¶ 16.) In other words, whatever Braasch's counsel did with regard to Dr. Mann's testimony, it did not prejudice Braasch because the testimony was not relevant and was not coming into evidence.

This determination was not an unreasonable application of *Strickland*. Failure to develop or make offers of proof regarding evidence that is, in any event, not relevant, does not "undermine confidence in the outcome" of Braasch's trial. Furthermore, it was not necessary for the court of appeals to assess whether Braasch's counsel was deficient on this point because Braasch bears the burden of proof on both prongs of the *Strickland* test. Even if Braasch's counsel was deficient, if it did not prejudice Braasch, relief was not warranted.

The court of appeals next rejected Braasch's argument faulting his trial counsel for failing to call character witnesses at trial. The court stated:

> Trial counsel explained that he did not seek out character witnesses because he did not want to open the door for the prosecution to present rebuttal evidence regarding character. Counsel stated, "Jason had some difficulties in his background. I just didn't believe that all the character evidence would be positive." Counsel's decision was a strategic one and rationally based on the facts and law. *See State v. Felton*, 110 Wis.2d 485, 502, 329 N.W.2d 161 (1983). Counsel was not ineffective for not calling character witnesses.

Case 2:04-cv-00593-WEC   Filed 03/08/06   Page 22 of 27   Document 45

(Decision at ¶ 17.)  Again, I cannot say that the court of appeals unreasonably applied *Strickland*.  According to Braasch, his trial attorney testified at the postconviction hearing that he did not call character witnesses because "I was not aware of positive character evidence . . . and I was strategically operating under the belief that . . . it would unfortunately open a door to Mr. Koss, to put on some devastating counter evidence."  (Pet. at p. 3-2.)  Not making character an issue at trial is a reasonable trial strategy when there is reason to believe that damaging negative character evidence would be introduced.  Braasch has not overcome the presumption the his trial counsel was exercising such sound trial strategy.  *See Strickland*, 466 U.S. at 689.

With regard to Braasch's next two arguments, that counsel was ineffective by failing to object to questions going to Braasch's truthfulness and suggesting that he had sex with one of the women he met, and by failing to object to repeated references that Braasch was affiliated with the Latin Kings street gang, the court of appeals ruled that Braasch had not properly preserved the issues for review.  (Decision at ¶¶ 18-19.)  Moreover, the court ruled in the alternative that Braasch was not prejudiced by his counsel's failure to object.  Because Braasch failed to properly preserve these arguments in the state courts, he has also forfeited them on habeas review.  "[F]ailure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court."  *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.1996).

Finally, Braasch's last argument as to why his trial counsel was deficient relates to counsel's allegedly withdrawing Braasch's plea of not guilty by reason of mental disease or defect without his client's consent.  Braasch did not raise this argument in his habeas petition, but he does argue it in his brief.  However, there is no indication that Braasch ever raised this argument in the state courts, and if he did, he did not argue it in his brief before the Wisconsin Court of Appeals.  Braasch has

23

therefore not exhausted state court remedies with regard to this claim as required by 28 U.S.C. § 2254(b)(1). Moreover, at this point Braasch has most likely defaulted any state court claim he may have had. *See State v. Lo*, 665 N.W.2d 756, 760, 264 Wis.2d 1, 9 (Wis. 2003) ("[C]laims of error that could have been raised on direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 motion, absent a showing of a sufficient reason."); *State v. Escalona-Naranjo*, 517 N.W.2d 157, 162-64, 185 Wis.2d 168, 181-85 (Wis. 1994). This court, therefore, will not reach the merits of Braasch's final three arguments because they have not been properly preserved.

In sum, Braasch is not entitled to habeas relief based on his first two arguments that his trial counsel rendered him ineffective assistance because the Wisconsin Court of Appeals' application of *Strickland* was not unreasonable. Braasch is not entitled to habeas relief based on the remaining three arguments because he did not properly present the issues to the state courts.

Sentencing Counsel

The court of appeals also rejected Braasch's argument that he received ineffective assistance of counsel at sentencing.

¶ 20 The complaints launched against sentencing counsel are that he did not spend enough time with Braasch, did not explain the sentencing process, did not inquire about potential witnesses to speak favorably about Braasch at sentencing, and did not obtain an independent sentencing investigation. Counsel explained why he did not want to present live testimony in support of Braasch and why he had potential witnesses submit letters instead. Counsel also considered that an independent sentencing investigation might not turn out favorably. Further, counsel's testimony contradicted Braasch's with respect to the length and scope of meetings the two had and the solicitation of comments favorable to Braasch. Thus, resolution of the complaints that counsel was inadequately prepared is dependent on the trial court's credibility determination. The trial court found counsel's representation to be competent and thereby found counsel's testimony to be more credible. *See Marshall v. Lonberger*, 459 U.S. 422, 433, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (where it is

24

clear that the trial court would have granted the relief sought by the defendant if it believed the defendant's testimony, its failure to grant the relief is tantamount to a finding against the defendant's credibility); *State v. Long*, 190 Wis.2d 386, 398, 526 N.W.2d 826 (Ct. App. 1994) ("when a trial court fails to make express findings of fact necessary to support its legal conclusions, we assume that the trial court made such findings in the way that supports its decision"). Further, Braasch has failed to suggest how the sentence, based primarily on the severity of the offenses, would have been different if counsel had performed differently. Braasch was not denied the effective assistance of counsel.

(Decision at ¶ 20.) The court of appeals, therefore, determined that Braasch was not entitled to relief because he failed to carry his burden on either prong of the *Strickland* test.

With regard to the first prong, the court based its finding that counsel was not deficient on a credibility determination and on sentencing counsel's strategy decisions. More specifically, the court of appeals deferred to the trial court's implicit credibility determination, i.e., the court believed counsel's representation that he had spent considerably more time with Braasch, and did more to solicit favorable evidence for Braasch, than Braasch claims.

Moreover, the court of appeals found that counsel's strategic decisions not to call live witnesses at sentencing, and not to go forward with an independent pre-sentence investigation, were reasonable. The record reflects that sentencing counsel testified that he preferred to have individuals write letters to the court rather than testify because "nobody can argue with it specifically," whereas live witnesses might be "beat up on the stand by the District attorney" or "back off . . . when they realize the seriousness of the offense." (Answer, Ex. D at 33-34 (State's appellate brief).) Furthermore, the attorney's decision not to go forward with an independent pre-sentence investigation was based on his experience that independent investigations are usually not helpful and often make the situation worse by providing additional negative information. (Answer, Ex. D at 33.)

25

I cannot say that the court of appeals' factual conclusions are unreasonable. The court relied on implicit credibility findings of the trial court to the effect that Braasch's sentencing counsel actually did more in preparation for sentencing than Braasch contends. It was not unreasonable for the court to credit counsel's testimony over Braasch's own assertions. I also cannot say that the court of appeals' determination that counsel's decisions not to call live witnesses and not to conduct an independent pre-sentence investigation were valid strategies, was unreasonable. Sentencing counsel gave reasons for taking these actions, and there is a presumption that counsel's decisions are sound trial strategy. *Strickland*, 466 U.S. at 689. Braasch has not offered sufficient reasons to overcome this presumption.

Perhaps more importantly, the court of appeals determined that Braasch failed to establish that the sentence would have been different if counsel had performed differently. This is because the court of appeals determined that Braasch's sentence was "based primarily on the severity of the offenses." Braasch was required to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. I cannot say that the court of appeals' determination that he failed to do so is unreasonable. Braasch has not pointed out any particular piece of evidence that, if it had been before the sentencing court, would have likely changed his sentence. And although Braasch faults his sentencing counsel for not having an expert testify as to his psychological history at sentencing, information regarding Braasch's psychological history was already before the court.

In sum, the court of appeals' determination that Braasch failed both to establish that his sentencing counsel was deficient and that he suffered prejudice was not unreasonable. Braasch is not entitled to habeas relief based on the claimed ineffective assistance of his sentencing counsel.

26

### E. New Trial or Sentencing in the "Interest of Justice"

Braasch's final asserted ground for habeas relief is that he should be granted a new trial or sentencing hearing in the interest of justice. Braasch made this argument before the court of appeals. The court of appeals treated the argument as a request that the court exercise its discretion under Wis. Stats. § 752.35, and denied the request. Braasch's argument does not raise any federal or constitutional ground separate from those discussed above, and this court is not empowered to grant habeas relief based on a general claim that such would be in the interest of justice. Habeas relief may only be granted if the petitioner is being held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Braasch is not entitled to habeas relief "in the interest of justice."

### V. CONCLUSION AND ORDERS

For all of the aforementioned reasons, Braasch has not demonstrated that he is entitled to habeas relief on any of the asserted grounds. Braasch's petition for writ of habeas corpus will therefore be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the petitioner's petition for writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 8th day of March 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

27